Morgan v. Covington Township et al, Ms. Pollack. Yes, Your Honor. Thank you. And Mr. Wolf. Good morning. May it please the Court, I reserve three minutes for rebuttal. We're here today basically for four different issues that all deal with the fact of being fair to both sides. The four issues, the first issue is race judicata, and when does that stop being applied? The majority of circuits have stated that the moment the complaint is filed, that's when it's stopped, the application of race judicata. The second issue is the affirmative defense. Basically, the second complaint that was filed, couldn't you have just, could you not simply have just amended your first complaint? You could have, but not on this issue, this particular claim in the second case because of the fact it did not arise until after the filing of the complaint. He's terminated when, on January 15th? Correct. January 15th, 2008, he was fired. And the second complaint was filed when? April 9th, 2009. When was the first complaint filed? Was October 27th, 2007. So, he was fired three months or so after. And so, your argument is really not complex. It's as a matter of law, even though most people would have thought, I think I'll amend the first complaint and add that to the case. That as a matter of law, the law apparently everywhere is that you don't have to do that and there's no claim preclusion. But there might be issue preclusion at the second trial from certain issues having been resolved. I would agree with you on that because of the fact that the right treatise and then plus all the circuits, the second, the sixth, the seventh, the ninth, the tenth, and the eleventh, all state that the guidepost, when it stops, is at the time of filing the complaint. There's all different things that happen in the course of a case and there might be strategic reasons why you wouldn't amend the complaint. And at this case, I had filed the second complaint, tried to consolidate both of the cases in one and was denied. When you tried to consolidate it and everything, it was pretty late, wasn't it? Correct. I mean, probably if you had filed it earlier, right after the discharge and tried to consolidate it, you would have gotten a different result. You know, most judges don't want new causes of action a couple weeks before a trial. I'm very sympathetic to the judge. But you're saying it doesn't matter. That door slammed. What's the first complaint that's filed? And any complaint that arose after that, the cause of action couldn't have arisen because he hadn't been discharged, is not subject to claim preclusion. It's that simple. Yes, it's that simple. Reasonable, unreasonable, or anything, that's a fixed rule of law. Yes, and it makes sense. It's a bright-line test that people know that the minute you file the complaint, the could-haves are assessed at that point, not thereafter. So it's a bright-line test. It's been a door, so it's pretty straightforward. And so that is the first issue that we are seeking. What would you do if the judge said, you know, I noticed that he's been discharged, you know, at some proceeding, while the first complaint is pending? And I just wonder whether you have a cause of action for that, because if you haven't, you better state it here because who knows? And you say, well, we're not bringing that here. That would be a separate case. Doesn't matter. You didn't have to bring it in the first case. Correct. So that is the argument, and the other courts, as I stated, reflect that. The second issue that we are here today for is the affirmative defense aspect of the court. And this argument and the other ones, one of the threshold questions really is, is in the lower court, did the defense, what they're going to argue here before you today, did they present those arguments to the district court during this trial? And the answer is no. So just like I couldn't come here and make new arguments, you would never allow that, the defense can't take arguments different from the approach that they made back during the trial. And the first one was the affirmative defense. Counsel told the ‑‑ instructed the court. So you're saying this is the, what, the same action? We were taking the same action no matter what? That's the affirmative defense you're claiming? Well, I'm saying that they never asserted it as an affirmative defense. But you're saying that that is an affirmative defense, right? That absolutely is an affirmative defense. The court here has held that it wasn't. Yes, and that's where the legal error is. Defendants want to talk now about implied consent. But any of those issues were not raised and preserved at the court below. What they argued is that it was a cause of action. They never had to move to amend because in their thinking it was always one, two, three. They didn't raise it as an affirmative defense in their answer is what you're saying. But did they not raise it in connection with summary judgment briefing? One sentence, you would never ‑‑ I would say no. One sentence is not ever going to preserve a claim, and especially today with the heightened pleading ‑‑ Well, but your opposition didn't do a whole lot better. I mean, all you said was you dealt with it for about one page in your opposition to summary judgment. So it's a very cursory treatment on both sides. But they did bring it up, did they not? They brought it up, but the question is, is that good enough? And right now the standards for pleadings are so ‑‑ When you opposed it, did you argue that it was waived at the time on your summary judgment one page response? No, I did not in summary judgment. However, that doesn't mean that I'm foreclosed at trial from raising it, which I did raise it at trial, that I'm not ‑‑ that it shouldn't be presented to the jury. And so I did not waive anything. That's a Rule 56 consideration, which is completely different than when you have a trial on the merits. I'm just trying to get through that hurdle. Did you consider at that point making like a Rule 56F motion for further discovery on this issue? No, because it's their burden, and they have to assert plea ‑‑ like they have to assert the defense. If they're not going to raise a defense in a pleading, that is their ‑‑ But you went to trial. You knew that this was likely to come up at trial. You were on notice. I would say, no, I'm not, because you have to have it in a pleading. One sentence. Technically, you're right. They did not file this defense, if it's an affirmative defense, to ‑‑ or they didn't mention it in their answer. They did bring it up later on, prior to trial. You responded to it, so you probably were, as a practical matter, on notice that they might bring this up at trial, correct? And I would say no. One sentence never puts someone on alert. Well, then why did you respond to it in your summary judgment opposition? I could do it two ways. I could ‑‑ like one sentence is what the defense amounted that to, and the court talked about and said that where the defendants were going made no sense. So, to me, and again, Rule 56 does not preclude someone at trial. You have to object at trial. You have to consent. And I would refer the court to Douglas v. Owen, no implied consent. And that was when they tried to amend at the time of trial, Douglas v. Owen's 50F3D1226. But the crucial issue here is that the court didn't decide whether there was an amendment or not. The court said the cause of action, we believe the cause of action includes this affirmative defense. And that is in error. Again, counsel never said, oh, well, they never mentioned it, the objection in the summary judgment, therefore they waived it. None of those issues were ever brought out. It was strictly under that third prong is a cause of action. But my point is, no doubt they didn't bring it up. They brought it up, let's say, quote, late. You responded to it. You didn't say that they waived it at that point. Wouldn't that be telling the court, okay, it's fair game for trial, let both sides bring it on, let the chips fall where they may? I would say no because of the fact at trial you have an opportunity to object to any of the evidence. All the evidence that was done at summary judgment, it's always larger at trial than it's ever going to be on a summary judgment standard, and that's just a threshold obligation. But, again, my argument would be is they never moved at all, and systems in court versus electronics. I think we've got that. Why don't you move to the refusal of the court to permit the client to call rebuttal witnesses at the trial? The rebuttal witnesses? Yes. Okay. We weren't allowed to call any rebuttal witnesses. And one of the issues, I'm sorry, pardon? No, go ahead. Okay. And it's an error because of the fact that credibility is never a collateral matter, regardless of whatever document you introduce. It always goes back to a witness testifying to the importance of that document or what that document means, so it could never be a collateral issue. And the court held and would not allow us to bring any of the three witnesses into the courtroom based on the fact that Let's assume you're right. Let's assume the court erred, and they should have allowed all three witnesses. Why wasn't that error harmless? It wasn't harmless because of the fact that the jury, for instance, for me, if you lie to me once, I'm not going to believe anything you say from the rest of the conversation we have, and that's what the jury could have completely discredited the whole entire defense, based on that showing that this man lied on the stand, and our court system should be endorsing the fact that you can't get on the stand and commit perjury without any consequences. And that's what happened in this case. This man said that he did not use personal equipment or, excuse me, government equipment for personal use. It was a blatant lie. I could not bring any evidence to show that, and the jury could definitely see you are a liar if I had brought any of the witnesses that I had asked to bring. I just had one question. Why did you wait until two weeks before the trial? What happened then to cause you to want to consolidate these two causes of action, whereas you had quite a long period before then to do that? What happened two weeks before the trial that caused you to do it, whereas you let a long time lapse and not do it? Okay, and I put this in a footnote in my complaint. I believe that all claims should have been tried together. It makes judicial sense to have another one, and then, so at that point, I had sought. I understand that, but that was true earlier, too. So, but why did you wait until two weeks before the trial to seek to amend and consolidate the two cases? Because of the fact that it was not, the court made certain that the termination claim was not raised, nor would be heard in the first claim. So I had to assert it in another complaint, or I would never be allowed to raise it at all. But you knew that earlier, though. No, I didn't have any statute of limitation problems. I could strategically decide not to, and in this case, I had asked the court to consolidate the case, and although he did not allow that, he allowed the defendants to present an affirmative defense that wasn't even pled. Nor did he ever ask for it to be considered. But the court says that you, this was a, Judge Caputo called it a last-ditched effort to preserve these claims because you filed the lawsuit after the court properly denied these claims because they hadn't been included in any of the pleadings or motions leading up to trial. How do you get around that? You get around it because of the fact that the termination didn't occur until three months thereafter, and the... No, no, he says the termination occurred one month before the case management order, and it was over six months before amended pleadings were due that the termination occurred. You get over that because the majority of circuits out there state that you don't even have to look at that. People could, I could decide that I don't want to bring the second claim. Yes, but didn't you attempt to raise this? Yes, and I was not allowed to raise it. Okay. That wasn't until two weeks before the trial. Correct. But that's when you filed the complaint. Correct. Well, I don't know that other circuits have, under these circumstances, said that you can wait and hold back. Yes. Particularly when you raise it and you get rebuffed to come in with a second complaint and then avoid res judicata. Well, I didn't raise it in a sense of a pleading, which is how the court required me to do. If I'm going to do something, I have to raise it in a pleading. The Brightline test makes sense because there's lots of different... First of all, you don't have a crystal ball, so you never know what's going to happen when you file a complaint. How do I know he's going to be terminated? How do I know that? I don't know that. So the Brightline test works for all situations. I don't have an obligation because there's all different circumstances. You never know if you're going to be able to amend. For whatever reason, I could be precluded from amending. So that's why this test that the other circuits have endorsed is a very straight line, easy-to-follow rule. Any more questions? Thank you. Thank you very much. Mr. Wolfe. Thank you, Your Honor. May it please the Court, Joel Wolfe on behalf of Covington Township, Sergeant Bernard Clarko and Tom Yerke. A couple of points I'd like to make. The opposing counsel just said, well, how would I know he's going to be terminated? Well, she knew he was terminated because she was at the hearing. She was at what? She was at the hearing on January 15th. On January 15th. That was a hearing that was requested by her on her client's behalf, which he did not attend. So she knew on January 15th, 2007, that he was terminated and waited until 11 days after or before trial to add that count. It's not even a cause of action. Okay, she could have added the count. She didn't. She also could have filed a new complaint, couldn't she? Well, I don't think so, Your Honor, because there's been characterization as the termination as a new count or a new cause of action. It's not. It's just adding on to her damages. The claims are the same. The claims would have remained the same. Well, I mean, before it was a suspension. Now it's a termination. I mean, this is like a whole new thing. He's not getting pay after he's terminated. He was suspended with pay. That's correct, and I believe you're making my point that it goes to damages, not a cause of action. The liability questions on failure to train, First Amendment retaliation, and procedural due process remain. It's not. What you're pointing out is what I raised with counsel, that if she can proceed with the second case, you've got her against the wall with all kinds of issue preclusion that matters. But not claim preclusion. Pardon me? Issue preclusion but not claim preclusion is Judge Greenberg's point. In other words, you can shatter her case bit by bit, but not claim preclusion. But you've got issue preclusion all over the place. I believe so, and it's important to note that let's say the court grants her request for a new trial. But the point that he's making is it's important to understand the distinction between issue preclusion and claim preclusion. You may win, but it may be by virtue of things that were done pertaining to issue preclusion. But I don't see how you can win as a matter of law with regard to claim preclusion. The same claims are before the court. You still have three same claims. But they've fired them. No. And we have to go against the great weight of authority, don't we, to reject her claim preclusion argument? Well, what would be the claim? What would be the claim after they fired him? He was heard. Well, but he was heard in a different way. He was fired, not suspended. I mean, it's a different claim. Yeah. I mean, what you're saying is it's a different claim, but the same reasons that pertain to it that he brought in the first apply to it, which is why I think Judge Greenberg's right that there may be issues that have been adjudicated. Same parties, same issue, ba-boom, ba-boom. But just as a matter technically of a technical matter of law, it's got to be issue preclusion and not claim preclusion. Well, again, I go back to the issue that it is an issue of damage. It's not necessarily a liability. What you're really saying is, you know, we're not doing her any favor if we reverse because she's going to run into an issue. It reminds me one time I wrote an opinion. I swear it's true. In a summary judgment, a court granted a summary judgment in a non-jury trial, I wrote an opinion and reversed it. We remanded it for trial before the same judge. How do you think it came out? So when I remember this, I was remanding it. I thought, well, this is ridiculous. But nevertheless, it should have been a summary judgment. And I have the same argument here, Your Honor. We'll have the same documents, same witnesses, same parties, same counsel. To what end? The mixed motive affirmative defense. Why isn't it an affirmative defense? Why is it not an affirmative defense? Why isn't it an affirmative defense? Why is it not an affirmative defense? In hindsight, I believe that it is. And I can tell you that the reason it was not pled because every statement of law, everywhere I looked, there was three elements to the claim. Protective activity, you have to show that they engaged in protective activity, retaliatory conduct, and then the burden would shift to the defendant to show, look at the same action would have taken place absence of the protective activity. A lot of lawyers would have thrown it at anyhow as an affirmative defense. For example, if you look at the Third Circuit model jury instructions, it treats it as an affirmative defense. I understand, Your Honor. There's no dispute. No, I mean, the argument you have in your defense is there's a Second Circuit case, Donovan, that says, but it need not be pled in the answer in that particular case. Well, not only that, the panel was discussing it earlier. This was raised at the summary judgment level. I raised it in my brief as an element. Sort of. It was there, Your Honor. She responded to it, and the court dealt with it. So let's recall the whole purpose of pleading the affirmative defense, to put the opposing side on notice that that was going to be a defense, give them an opportunity to prepare a defense. And you heard my questions to Ms. Pollack. She was on some notice. That's correct. And what about the rebuttal witnesses? Remember what the trial, what was being tried, Your Honor. There was one claim, a First Amendment retaliation claim. We can talk about whether the third element was a defense or an element, but at the very least, she had to show, Mr. Morgan had to show that he had engaged in protected activity, constitutionally protected activity, and that as a result of that engagement, that there was retaliatory conduct. Well, not one of her three witnesses, which she sought to offer to the jury, would have testified on any of those matters. But they would have gone to the credibility of Klocko. I mean, you've got Van Fleet. He testified that he never used Covington, or Yerke testified that he never used Covington property for personal use, and Van Fleet would have said that was a lie. So that would have gone to Yerke's credibility. That's correct. Feindeiser, F-I-N-D-E-I-S, would have testified that she had knowledge of Morgan and that she also knew Klocko and he handled matters for her, whatever that meant. Yerke Jaeger, however, says that Klocko denied that he ever charged anyone or that Chownship has ever charged anyone with official oppression on a prior occasion. And Yerke Jaeger would have testified that that's just not true, that they did charge others. So that would have gone to credibility as well. Well, one, you're assuming that that's what their testimony would have been. Brian Jaeger was. For today's purposes, I think we have to assume that's what their testimony would have been. All right. With regard to. . . Because credibility was she had an opportunity to impeach these witnesses. Sergeant Klocko, Tom Yerke, Brian Jaeger. How can she say that Mr. Jaeger is going to testify that you had actually brought. . . I mean, somebody's going to jump up and maybe there's not much hearsay done at these hearings, but somebody's liable to jump up and say, that's just hearsay. We don't have Jaeger here. Jaeger was there. She could have asked him, well, if Mr. Jaeger said that you never charged anybody with official oppression, would he be lying? Then she'd have a direct statement to contradict, but she didn't ask him that. Wouldn't it be better if Jaeger were on the stand? He was on the stand. He testified at trial. She had an opportunity to cross-examine him on that very issue.  What about the rebuttal witnesses with regard to Yerke? With regard to Yerke, the issue of whether or not he was personal equipment, number one, she knew about that when he was on the stand. She could have asked the same thing, Your Honor. She could have asked him while he was on the stand. She had the opportunity and didn't take advantage of it. Does 608, Rule 608B. . . Yes, Your Honor. Are the rules of evidence control this? I believe so. It's a strange rule, isn't it? It is, but it's there. And again, I would remind the court, the panel, of the standard of review. This is an evidentiary question which was within the district court's discretion. Why didn't you argue about the witness issue? Why didn't you just argue the error was harmless? Wouldn't that be the easy argument to make? Let's say, okay, fine. I'm not conceding that there was error, so I'm not going to say. . . But if there was, if there were error, it was harmless. Well, I think we're making an argument, say, in the collateral. It really wasn't important to the court issues. You didn't raise that issue at all. Pardon me? That issue wasn't briefed before us. Well, I think it's implied when we say the collateral. But really, whatever they had to offer, it doesn't go to the court issues of whether or not there is a protective activity and whether there's retaliation as a result. I'm not so sure it's implied. I mean, normally it's almost de rigueur that if you think that . . . You almost make a two-part argument. One, there wasn't any error in not allowing these witnesses to testify. Two, even if there were an error, it was harmless, and here's why. I think the end result is the same, that it was harmless because it doesn't go to the court issues. It wouldn't help the jury decide one way or another whether or not there's protective conduct. It's kind of hard to say, not having been there, that key witnesses' credibility doesn't get darn close to something that is a court issue. If their credibility is what ultimately causes this person to be terminated and you can undermine their credibility . . . Well, Your Honor, I do not think that the credibility of . . . I think the credibility of Tom Yerke, Sergeant Klocko, and Brian Yager were at issue, and the jury did consider it. But recall what was the issue, whether or not the referral of certain statements to the Penn State Police and Lackawanna County District Attorney's Office was retaliatory in nature, whether it was caused by his hearing request. Well, you have Lieutenant LeBel getting up on the stand from the Pennsylvania State Police saying, I don't recall. I had a couple conversations over the last couple years with people from Covington Township. I really don't recall who I talked to, what was said. Then you have Chief Joseph Jordan from the Lackawanna County District Attorney's Office getting up on the stand and saying, I didn't find anything unusual about what was requested of me. I didn't find anything improper of what was requested of me. All they did is ask me to take a look at it. Here's the situation. We need an outside party to take a look at it. Please do so. That's what he did. He sends them a letter saying, I didn't find anything criminal. You might want to look at it internally. When Morgan was first suspended, why was there no hearing? When Morgan was first suspended. Was there a hearing? No, there was no hearing, Your Honor. Why? Because this was a repeated course of conduct on behalf of Mr. Morgan. There was a serious situation in which we had a victim whose concerns were not being addressed. He was unavailable. There are a number of reasons. I mean, it seemed like a lot of these things happen almost every day in various organizations, including police departments. I mean, he left a girlfriend's door open. He shouldn't have done it, of course. He tried to deal with another girlfriend's issue with a former girlfriend. Shouldn't have done it, but is that why you suspend people? Well, if those two instances in and of themselves, maybe, maybe not. But when you have been, Mr. Morgan was notified 12 times in writing, Your Honor. We had a victim whose concerns were not being addressed. We had Mr. Morgan in his police uniform arriving at that victim's place of employment, asking her supervisor, hey, you know what, can you do something for me? That's not unusual. But if you're going to suspend him, why not give him a chance to defend himself at a hearing? I mean, my guess is you probably thought, well, look, we're suspending with pay, so it's no big deal. He'll get some time off and get paid for it. But that really doesn't get you home, does it? Well, if you take a look at the circumstances, you know, Pellon's brief says, look, it's a hardened past rule. Look at Dee versus the Borough of Delmar. If he has a constitutionally protected property interest, as a matter of right, as a matter of course, he's entitled to notice in the hearing. That's not an accurate statement of law. Even the Dee case says, hold on. They get basically the benefit of the doubt there. But again, you have to take a look at the circumstances presented to it. If there's no chance, for example, of an erroneous disposition or a very slight chance, then there's less need. That's correct. And he was provided an opportunity for a prompt hearing. He just didn't take advantage of it. All right. I have no further questions. Thank you. Thank you, Your Honor. Ms. Pollack. 608 was never argued in the lower court. It was the first time it was ever mentioned was here on appeal. Just like I could not present an argument that I did not preserve below. Well, he objected to it. The basis was collateral. You can't change based hindsight, okay, this is what I probably should have argued, I would have gotten. 608 is collateral, even though it's worded differently. The basis of it is it's collateral. Okay, credibility to me could never, ever be. Except on 608. As strange as 608 is. To me, he didn't argue it, so therefore he didn't preserve it, but I hear what you're saying. All right, no, that's your point. That's a good point. About the emergency, in order to not give someone due process, which is simply notice and an opportunity to respond, it has to be an emergency. And the case that's cited, the Malin case by the U.S. Supreme Court, that was when someone was indicted. We don't have to worry about anybody when somebody's indicted. Makes sense. You, employer, don't worry because an independent organization already looked at this and sees that there's wrongdoing here. So you don't have to worry about if you suspend this person because it's already been proven. So I think that that didn't happen here. He never ever got an opportunity to present his side. And the reason what happened is he asked for a hearing. Two days later, he's turned into the state police for criminal investigation. Then after that, it didn't work. Then it's the local district attorney's office, and neither one proceeded to charge Mr. Morgan. And to me, you would actually be insane if you would put yourself out there after somebody's coming after you, gunning for you with criminal charges. You would actually voluntarily speak with those people who don't want to help you. They want to hurt you. So it wasn't like a federal court. You're in here, and we have a referee that's going to make sure nothing goes awry. So to me, there was no reason, and he shouldn't appear because of the fact that they were gunning for him. So it's very rational that he wouldn't do that. Now, counsel always wants to say it's implied, it's implied, all this error is implied. But it can't be implied. It has to be affirmatively stated. And so we ask that you reverse. But isn't he right that the key issue here is really notice? If it's implied? Of the affirmative defense issue, I mean, or other. I mean, he said implied with respect to something else, but are you talking about the same act? We would have taken the same action defense, or are you talking about something else? Well, he kept saying that the harmless error, you said, oh, that was implied. And then the affirmative. It was an argument I think should have been made, but it doesn't mean we probably can't look at it even if the argument wasn't made. Well, to me, the affirmative defense aspects of it, I couldn't consolidate the actions. How can he get a defense he's never pled? How is that fair? So I would say it wasn't implied. We objected to it. His point on that is the purpose of the affirmative defense is so you have notice. You eventually had notice, albeit late, if it is an affirmative defense. You responded to it. You didn't argue waiver. And then it comes up at trial. And his point is you weren't really prejudiced by it. I mean, that's the argument. And can I answer your question? Sure. I would say that we are prejudiced by it because the fact that we presented our case that that affirmative defense was never going to happen because we filed the jury instructions without the affirmative defense part in the model jury instructions. So we are prejudiced that we have to deal with something that we did not have to. And to be fair to both sides, you can't let one do something and not the other. You have to let both amend or argue. Thank you. Thank you. Thank you, both counsel, for well-presented arguments. We'll take the matter under advisement.